# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| KEITH JOHNSON and JOHN STRICKLIN, each individually and on behalf of all others similarly situated,<br><br>v.<br><br>McKESSON CORPORATION | **Case No. 3:22-cv-00806**<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

## PLAINTIFFS' ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, McKesson's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout McKesson's organization.

3. As a result, McKesson's workers who were not exempt from the overtime requirements under federal and state law, were not paid for all hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4. Keith Johnson and John Stricklin are two such McKesson workers.

5. McKesson could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, McKesson used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. McKesson pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. McKesson's failure to pay wages, including proper overtime, for all hours worked to its workers across the United States violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. McKesson's failure to pay wages, including proper overtime, for all hours worked, and to pay agred wages, to its workers in Illinois also violates the the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS § 115/1 *et seq.*

11. Johnson and Stricklin bring this lawsuit to recover these unpaid overtime wages and other damages owed by McKesson to them and the non-overtime-exempt workers like them, who were the ultimate victims of not just the Kronos hack, but also McKesson's decision to make its front line workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by McKesson to all these workers, along with the penalties, interest, and other remedies provided by federal and Illinois law.

### JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because McKesson is headquartered in this District.

## PARTIES

16. **Plaintiff Keith Johnson** is a natural person.

17. Johnson has been, at all relevant times, an employee of McKesson.

18. Johnson has worked for McKesson since December 2020.

19. **Plaintiff John Stricklin** is a natural person.

20. Stricklin has been, at all relevant times, an employee of McKesson.

21. Striklin has worked for McKesson since March 1999.

22. Striclin worked for McKesson in Illinois.

23. Johnson and Stricklin represents at least two groups of similarly situated McKesson workers.

24. Johnson and Stricklin represent a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of McKesson who were non-exempt under the FLSA and who worked for McKesson in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

25. Stricklin represents a class of similarly situated workers under Illinois law pursuant to Federal Rule of Civil Procedure 23. This "Illinois Class" is defined as:

> **All current or former hourly and salaried employees of McKesson who were not exempt from overtime pay and who worked for McKesson in Illinois at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

26. Together, throughout this Complaint, the FLSA Collective members and Illinois Class members are referred to as the "Similarly Situated Workers."

27. **Defendant McKesson Corporation ("McKesson")** is a foreign corporation.

28. McKesson maintains its headquarters and principal place of business in this District.

29. McKesson may be served by service upon its registered agent, **Corporation Service Company, 211 E. 7th St., Ste. 620, Austin, TX 78701**, or by any other method allowed by law.

### COVERAGE UNDER THE FLSA

30. At all relevant times, McKesson was an employer of Johnson and Stricklin within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, McKesson was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32. At all relevant times, McKesson has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

33. During at least the last three years, McKesson has had gross annual sales in excess of $500,000.

34. During at least the last three years, McKesson was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

35. McKesson employs many workers, including Johnson and Stricklin, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

36. The goods and materials handled, sold, or otherwise worked on by Johnson, Stricklin, and other McKesson employees and that have been moved in interstate commerce include, but are not limited to, food and beverages.

**FACTS**

37. McKesson delivers pharmaceuticals and provides other health information technology, medical supplies, and care management tools.

38. McKesson employs around 76,000 people. McKesson, About McKesson, https://www.mckesson.com/About-McKesson/ (last visited Apr. 10, 2022).

39. Many of McKesson's employees are non-overitme-exempt hourly and salaried workers.

40. Since at least 2021, McKesson has used timekeeping software and hardware operated and maintained by Kronos.

41. On or about December 11, 2021, Kronos was hacked with ransomware.

42. The Kronos interfered with its clients, including McKesson's, ability to use Kronos's software and hardware to track hours and pay employees.

43. Since the onset of the Kronos hack, McKesson has not kept accurate track of the hours that Johnson, Stricklin, and Similarly Situated Workers have worked.

44. Instead, McKesson has used various methods to estimate the number of hours Johnson, Stricklin, and Similarly Situated Workers work in each pay period.

45. For example, McKesson issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

46. This means that employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

47. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

48. Many employees were not even paid their non-overtime wages for hours worked before 40 in a workweek.

49. Johnson and Stricklin and each such employees.

50. Instead of paying Johnson and Stricklin for the hours he actually worked (including overtime hours), McKesson simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Johnson and Stricklin's actual hours worked and regular pay rates.

51. In some instances, Johnson and Stricklin were paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x the regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

52. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

53. McKesson knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

54. McKesson knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

55. McKesson knows it has to pay the wages it agreed to pay its employees.

56. McKesson knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

57. McKesson could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

58. Instead of accurately tracking hours and paying employees wages and overtime, McKesson decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

59. It was feasible for McKesson to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

60. But it chose not to do that.

61. In other words, McKesson pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

62. Johnson and Stricklin are two of the many McKesson employees who had to shoulder the burden of this decision by McKesson.

63. Johnson was and is a non-exempt hourly employee of McKesson.

64. Johnson regularly works over 40 hours per week for McKesson.

65. Johnson's normal, pre-Kronos hack hours are reflected in McKesson's records.

66. Since the Kronos hack, McKesson has not paid Johnson for him actual hours worked each week.

67. Since the hack took place, Johnson has not been accurately recording the hours worked by Johnson and its other workers.

68. Even though McKesson has had Johnson record and submit him hours, McKesson have not issued proper payment for all hours worked.

69. Even when McKesson has issued payment to Johnson for any overtime, the overtime is not calculated based on Johnson's regular rates, as required by federal law.

70. Stricklin was and is a non-exempt hourly employee of McKesson.

71. Stricklin's regularly works over 40 hours per week for McKesson.

72. Stricklin's normal, pre-Kronos hack hours are reflected in McKesson's records.

73. Since the Kronos hack, McKesson has not paid Stricklin for him actual hours worked each week.

74. Since the hack took place, McKesson has not been accurately recording the hours worked by Stricklin and its other workers.

75. Even though McKesson has had Stricklin record and submit him hours, McKesson have not issued proper payment for all hours worked.

76. Even when McKesson has issued payment to Stricklin for any overtime, the overtime is not calculated based on Stricklin's regular rates, as required by federal law.

77. Even when McKesson has issued payment to Stricklin for any overtime, the overtime is not calculated based on Stricklin's regular rates, as required by Illinois law.

78. McKesson was aware of the overtime requirements of the FLSA.

79. McKesson nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Johnson and Stricklin.

80. McKesson's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

81. The full overtime wages owed to Johnson, Stricklin, and the Similarly Situated Workers became "unpaid" when the work for McKesson was done—that is, on Johnson, Stricklin, and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

82. At the time McKesson failed to pay Johnson, Stricklin, and the Similarly Situated Workers in full for their overtime hours by their regular paydays, McKesson became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

83. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

84. Even if McKesson made any untimely payment of unpaid wages due and owing to Johnson, Stricklin, or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

85. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

86. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to McKesson's acts and omissions resulting in the unpaid wages in the first place.

87. Johnson, Stricklin, and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by McKesson under federal and Illinois law.

## COLLECTIVE ACTION ALLEGATIONS

88. Johnson and Stricklin incorporate all other allegations.

89. Numerous individuals were victimized by McKesson's patterns, practices, and policies, which are in willful violation of the FLSA.

90. Based on their experiences and tenure with McKesson, Johnson and Stricklin are aware that McKesson's illegal practices were imposed on the FLSA Collective.

91. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

92. These employees are victims of McKesson's unlawful compensation practices and are similarly situated to Johnson and Stricklin in terms of the pay provisions and employment practices at issue in this lawsuit.

93. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

94. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

95. McKesson's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

96. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

97. Johnson and Stricklin incorporate all other allegations.

98. The illegal practices McKesson imposed on Stricklin were likewise imposed on the Illinois Class members.

99. Numerous other individuals who worked for McKesson were were not properly compensated for all hours worked, as required by Illinois law.

100. The Illinois Class is so numerous that joinder of all members of the class is impracticable.

101. McKesson imposed uniform practices and policies on Stricklin and the Illinois Class members regardless of any individualized factors.

102. Based on him experience and tenure with McKesson, as well as coverage of the Kronos hack, Stricklin is aware that McKesson's illegal practices were imposed on the Illinois Class members.

103. Illinois Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

104. McKesson's failure to pay wages and overtime compensation in accordance with Illinois law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Illinois Class members.

105. McKesson's failure to pay proper wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Illinois Class members.

106. Stricklin's experiences are therefore typical of the experiences of the Illinois Class members.

107. Stricklin has no interest contrary to, or in conflict with, the members of the Illinois Class. Like each member of the proposed class, Stricklin has an interest in obtaining the unpaid wages and other damages owed under the law.

108. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

109. Absent this action, many Illinois Class members likely will not obtain redress of their injuries and McKesson will reap the unjust benefits of violating Illinois law.

110. Furthermore, even if some of the Illinois Class members could afford individual litigation against McKesson, it would be unduly burdensome to the judicial system.

111. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

112. The questions of law and fact common to each of the Illinois Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Illinois Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b. Whether McKesson's failure to pay overtime at the rates required by law violated the IMWL; and

    c. Whether McKesson failed to pay the Illinois class mebers at their agreed upon rates of pay, as reuiqred by the IWPCA.

113. Stricklin's claims are typical of the Illinois Class members. Stricklin and the Illinois Class members have all sustained damages arising out of McKesson's illegal and uniform employment policies.

114. Stricklin knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

115. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

**FIRST CAUSE OF ACTION— FLSA VIOLATIONS
AS TO JOHNSON, STRICKLIN, AND THE FLSA COLLECTIVE**

116. Johnson and Stricklin incorporate each other allegation.

117. By failing to pay Johnson, Stricklin, and the FLSA Collective members overtime at 1.5 times their regular rates, McKesson violated the FLSA. 29 U.S.C. § 207(a).

118. McKesson owe Johnson, Stricklin, and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

119. McKesson owe Johnson, Stricklin, and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

120. McKesson knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

121. Because McKesson knew, or showed reckless disregard for whether, their pay practices violated the FLSA, McKesson owe these wages for at least the past three years.

122. McKesson's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

123. Because McKesson's decision not to pay overtime was not made in good faith, McKesson also owes Johnson, Stricklin, and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

124. Accordingly, Johnson, Stricklin, and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL AS TO STRICKLIN AND THE ILLINOIS CLASS

125. Johnson and Stricklin incorporate all other allegations.

126. The conduct alleged in this Complaint violates the IMWL.

127. At all relevant times, McKesson was and is an "employer" within the meaning of the IMWL.

128. At all relevant times, McKesson employed Stricklin and all other Illinois Class Members as "employees" within the meaning of the IMWL.

129. The IMWL requires employers like McKesson to pay overtime to all non-exempt employees.

130. Stricklin and the other Illinois Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

131. Within the applicable limitations period, McKesson had a policy and practice of failing to pay proper overtime to the Illinois Class Members for their hours worked in excess of 40 hours per week. IMWL, 820 ILCS § 105/4(a).

132. As a result of McKesson's failure to pay proper overtime to Stricklin and the Illinois Class Members for work performed in excess of 40 hours in a workweek, McKesson violated the IMWL.

133. Stricklin and the Illinois Class Members are entitled to overtime wages under the IMWL in an amount equal to 1.5 times their rates of pay, plus interest, attorneys' fees, costs, and all other damages allowed under the IMWL. IMWL, 820 ILCS § 105/12.

134. Interest under the IMWL is calculated as 2% of the amount of the unpaid wages for each month following the date of the unpaid wages until paid for each unpaid employee.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE IWPCA AS TO STRICKLIN AND THE ILLINOIS CLASS

135. Johnson and Stricklin incorporate all other allegations.

136. The conduct alleged in this Complaint violates the IWPCA.

137. At all relevant times, McKesson was and is an "employer" within the meaning of the IWPCA.

138. At all relevant times, McKesson employed Stricklin and all other Illinois Class Members as "employees" within the meaning of the IWPCA.

139. The IWPCA requires employers like McKesson to pay workers at their agreed upon rates of pay.

140. McKesson obligation under the IWPCA to pay workers at their agreed upon rates of pay regardless of the basis of calculation. IWPCA, 820 ILCS § 115/3.

141. McKesson violated the IWPCA by failing to compensate Stricklin and the Illinois Class Members for all hours worked in Illinois at their agreed upon rates of pay.

142. McKesson was required to pay workers their wages and final compensation within the time allowed by the IWPCA. IWPCA, 820 ILCS § 115/4.

143. McKesson violated the IWPCA by failing to pay Stricklin and the Illinois Class Members their wages and final compensation within the time required under the IWPCA.

144. Under the IWPCA, Stricklin and the Illinois Class Members are entitled to recover their unpaid wages, final compensation, and wage supplements, plus interest, attorneys' fees, costs, and all other damages allowed under the IWPCA. IWPCA, 820 ILCS § 115/14.

145. Interest under the IWPCA is calculated as 2% of the amount of the underpayment for each month following the date of the underpayment until paid for each unpaid employee.

### RELIEF SOUGHT

Johnson and Stricklin pray for judgment against McKesson as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order certifying a class action for the Illinois law claims;

c. For an order finding McKesson liable for violations of federal wage laws with respect to Johnson, Stricklin, and all FLSA Collective members covered by this case;

d. For an order finding McKesson liable for violations of Illinois wage laws with respect to Stricklin and all Illinois Class members covered by this case;

e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Johnson, Stricklin, and all FLSA Collective members covered by this case;

f. For a judgment awarding all unpaid wages, liquidated damages, and penalties under Illinois law to Stricklin and all Illinois Class members covered by this case;

g. For an equitable accounting and restitution of wages due to Johnson, Stricklin, and all FLSA Collective and Illinois Class members members covered by this case;

h. For a judgment awarding attorneys' fees to Johnson, Stricklin, and all FLSA Collective and Illinois Class members covered by this case;

i. For a judgment awarding costs of this action to Johnson, Stricklin, and all FLSA Collective and Illinois Class members covered by this case;

j. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Johnson, Stricklin, and all FLSA Collective and Illinois Class members covered by this case; and

k. For an order awarding 2% monthly interest on all overtime compensation due to Stricklin and all Illinois Class Members covered by this case, from the date the wages were due until paid;

l. For an order awarding 2% monthly interest on all overtime compensation due to Stricklin and all Illinois Class Members covered by this case, from the date the underpayments were due until paid;

m. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
     _____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiffs**